UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| REGASSA OLJIRRA, | Case No. 12-CV-0994 (PJS/JSM) |
| Plaintiff, | |
| v. | ORDER |
| ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services, Washington, D.C.; and JANET NAPOLITANO, Secretary, Department of Homeland Security, Washington, D.C., | |
| Defendants. | |

Marc Prokosch, KARAM & ASSOCIATES, for plaintiff.

Erin E. Brizius and Gregory G. Brooker, UNITED STATES ATTORNEY'S OFFICE, for defendants.

Plaintiff Regassa Oljirra seeks to compel defendants United States Citizenship and Immigration Services ("USCIS") and Department of Homeland Security to make a decision on his application to become a legal permanent resident of the United States. This matter is before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment. For the reasons stated below, the Court finds that it has jurisdiction over this action and therefore denies defendants' motion to dismiss. The Court also determines, however, that defendants are entitled to summary judgment on the merits of Oljirra's claim.

I. FACTS

Oljirra is a citizen of Ethiopia who was granted asylum in the United States in 1999. Compl. ¶ 7 [ECF No. 1]; Defs.' Ex. 1 ¶ 3 [ECF No. 17-1] ("Ex."). On May 21, 2001, Oljirra

submitted a "Form I-485" — that is, an application for lawful permanent residency. Ex. ¶ 5. At that time, federal law capped the number of asylum-based applications for legal permanent residency that could be granted in a given year at 10,000. *See* 8 U.S.C. § 1159(b) (2000). This statutory cap led to a substantial backlog of applications; at the time that Oljirra submitted his application, he faced a waiting period of approximately seven years. Ex. ¶ 6.

Congress eliminated the statutory cap in the REAL ID Act of 2005. *See* Pub. L. 109-13, Div. B, § 101(g)(1)(B)(i) (2005). But Oljirra's application for legal permanent residency remained pending because of his prior membership in the Oromo Liberation Front ("OLF"). Ex. ¶¶ 12-13. Broadly speaking, 8 U.S.C. § 1182(a)(3)(B) renders inadmissible any alien who has engaged in terrorist activity. USCIS has previously determined that the activities of the OLF bring that organization within the definition of what is commonly called a "Tier III" terrorist organization. *See* Ex. ¶ 16; 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (defining a "terrorist organization" to include "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" certain statutorily defined terrorist activities).

Section 1182, however, also gives defendants the discretion to exempt an applicant from the terrorism-related inadmissibility provisions of § 1182(a)(3)(B). *See* 8 U.S.C. § 1182(d)(3)(B). Oljirra was not eligible for this exemption in 2005 (when the statutory cap on I-485 applications was lifted), but the exemption was significantly broadened in December 2007. As amended, § 1182(d)(3)(B)(i) provides, in relevant part:

> The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) of this section shall not apply with respect to an alien within the scope of that

>subsection or that subsection (a)(3)(B)(vi)(III) of this section shall
>not apply to a group within the scope of that subsection . . . .

Under § 1182(d)(3)(B)(i), then, defendants have the discretion to exempt Oljirra from the terrorism-related inadmissibility provisions of § 1182(a)(3)(B), but they have had that discretion only since December 2007. *See Debba v. Heinauer*, 366 Fed. App'x 696, 697-98 (8th Cir. 2010) (per curiam) (explaining the relevant statutory history); *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 929-30 (D. Minn. 2011) (same).

In March 2008, USCIS issued a policy memorandum instructing its field agents to place on hold any I-485 applications that might eventually qualify for an exemption under amended § 1182(d)(3)(B). Ex. ¶ 21. Pursuant to that memorandum and other directives later issued by USCIS, Oljirra's application was placed and kept on adjudicatory hold. Ex. ¶¶ 21-22. Meanwhile, USCIS awaited guidance from the State Department and the Department of Homeland Security as to what groups and individuals would qualify for exemptions under amended § 1182(d)(3)(B). *Id*.

The Secretary of State and the Secretary of Homeland Security exercised their exemption authority under § 1182(d)(3)(B) on a number of occasions between 2006 and July 2012. To cite just a couple examples, exemptions have been granted for aliens who were under duress when they provided material support to designated terrorist organizations, *see* 72 Fed. Reg. 26138-02 (May 8, 2007); for aliens who associated with the All Burma Students' Democratic Front, *see* 76 Fed. Reg. 2131-01 (Jan. 12, 2011), or the All India Sikh Students Federation – Bittu Faction, *see* 76 Fed. Reg. 2130-02 (Jan. 12, 2011); and for aliens who provided medical care to members of terrorist organizations under certain limited circumstances, *see* 76 Fed. Reg. 70463-03 (Nov. 14, 2011). *See* Ex. ¶ 24 n.9. But none of these exemptions applied to the OLF or Oljirra.

In August 2012, however, the Secretary of Homeland Security created a new Limited General Exemption ("LGE"), which could help Oljirra and other applicants who were involved with the OLF. 77 Fed. Reg. 49821-02 (Aug. 17, 2012). Applying the LGE requires USCIS to examine both the alien seeking the exemption and the terrorist organization with which the alien was involved. First, USCIS must assess the type of involvement that the alien had with the terrorist organization. Second, if the nature of the alien's activities does not disqualify him, USCIS must assess whether the particular terrorist organization meets certain criteria. For example, organizations that engaged in the practice of torture or genocide do not qualify for the LGE. Finally, if both the alien and the organization satisfy the necessary criteria, USCIS must then engage in a multi-factor analysis to determine whether the alien should be exempted. Factors to be considered in making this assessment include:

> [t]he nature of the activities committed by the terrorist organization, including the extent to which the activities have targeted noncombatant persons; the alien's awareness of those activities; the amount, type, and frequency of material support or solicitation provided; the length and nature of military-type training provided; the length of time since material support or solicitation was provided, or military-type training was received, and the alien's conduct since that time; and any other relevant factor.

*Id*. at 49822. USCIS is currently studying whether the OLF is a qualifying organization under the LGE and, if so, whether Oljirra should be exempted under the LGE in light of the criteria described above.

## II.  ANALYSIS

Oljirra filed this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., alleging that defendants have unreasonably delayed the adjudication of his I-485

application. Defendants now move to dismiss for lack of jurisdiction and, in the alternative, move for summary judgment on the merits of Oljirra's claim.

In support of their motion to dismiss, defendants argue that the Court lacks jurisdiction over Oljirra's claim by virtue of 8 U.S.C. § 1252(a)(2)(B), which deprives courts of jurisdiction to review decisions made by defendants under § 1182(a)(3)(B). As this Court has previously found, however, § 1252(a)(2)(B) deprives this Court only of jurisdiction to review the *merits* of a decision to grant or deny an exemption under § 1182(a)(3)(B); it does not deprive this Court of jurisdiction to order defendants to *make* a decision. *See Al Sawad v. Mayorkas*, No. 11-CV-2923, 2012 WL 3238258, at *2 (D. Minn. Aug. 7, 2012); *Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1035 (D. Minn. 2008). The Court therefore rejects defendants' argument that the Court lacks subject-matter jurisdiction.[1]

In support of their motion for summary judgment, defendants argue that their delay in adjudicating Oljirra's application is reasonable as a matter of law. The parties agree that, in assessing the reasonableness of defendants' delay, the Court should apply the factors identified in *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply

---

[1] Defendants also argue that Oljirra lacks Article III standing and fails to state a claim under the APA because he is not currently suffering any injury. The Court disagrees. The APA gives Oljirra the right to a timely decision on his I-485 application, and the alleged failure of defendants to provide a timely decision deprives him of that right, which is all the injury necessary to establish Article III standing and to state an APA claim. Moreover, even if a greater showing of injury were necessary, the anxiety suffered by Oljirra because of continued uncertainty about his legal status is sufficient both to establish standing and to state a claim.

>   content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80 (internal citations and quotations omitted).

Applying these factors, the Court readily concludes that defendants are entitled to summary judgment. Indeed, only the third of the six *TRAC* factors weighs clearly in Oljirra's favor — that is, Oljirra's application for legal permanent residency implicates humanitarian rather than economic concerns. The remaining *TRAC* factors either are neutral or weigh heavily in defendants' favor.

As an initial matter, it is important to identify the delay whose reasonableness is being challenged. Oljirra submitted his I-485 application in 2001. Thus, says Oljirra, he is challenging a delay of 12 years. As explained above, however, the delay up until 2005 was not caused by any decision of defendants, but instead by the fact that Congress capped the number of applications that could be granted each year. Oljirra simply had to get in line, like every other applicant. Although Congress lifted the cap in 2005, defendants did not have authority to exempt Oljirra from the terrorism-related inadmissability provisions until December 2007, when § 1182(d)(3)(B) was broadened. Thus, the delay in this case, fairly construed, is only about five years.

Turning now to the *TRAC* factors:

The first *TRAC* factor requires the Court to examine whether there is some justification for the government's delay. In this case, the Court concludes that defendants have ample justification for their delay, as the issues presented by Oljirra's application are vastly more complicated than the issues presented by a typical I-485 application. Typically, the processing of an I-485 application involves little more than performing a "name check" and various ministerial duties. *See, e.g.*, *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1143-44, 1147 (D. Ariz. 2008) (finding a six-year delay in processing plaintiff's "name check" to be unreasonable); *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1258-61 (W.D. Wash. 2008) (finding a three-year delay in processing a "name check" to be unreasonable). In Oljirra's case, by contrast, defendants must make a difficult and sensitive policy decision that implicates national-security, foreign-policy, and humanitarian concerns. The decisionmaking process also requires consultation between two Cabinet-level officials and the head of USCIS.

Moreover, these officials have not been delinquent in their duties. As described above, they have regularly exercised their exemption authority under § 1182(d)(3)(B). *See Al Sawad*, 2012 WL 3238258, at *3 (listing the Iraqi National Congress, the Kurdistan Democratic Party, the Patriotic Union of Kurdistan, the All India Sikh Students Federation – Bittu Faction, the All Burma Students' Democratic Front, and the Kosovo Liberation Army, among other groups, as having been granted an exemption pursuant to § 1182(d)(3)(B)); Ex. ¶ 24 n.9 (same). Of particular importance to this case, defendants exercised their exemption authority in August 2012 to create an exemption — the LGE — that may help Oljirra. *See* 77 Fed. Reg. 49821-02 (Aug. 17, 2012). But the decision whether Oljirra qualifies for the LGE is itself difficult and sensitive. To date, USCIS has had only about eight months to (1) assess the nature of Oljirra's

involvement with the OLF; (2) determine whether the OLF is a qualifying organization for purposes of the LGE; and (3) apply the multi-factor test set forth in the LGE to determine whether Oljirra should be granted an exemption. Given the complexity of the issues concerning Oljirra's application — and given the fact that there are undoubtedly thousands of other applicants who are also seeking an exemption under the LGE — the Court concludes that the government's delay in adjudicating Oljirra's application is justifiable.

Finally, the record demonstrates that USCIS personnel have done what they can to expedite the processing of Oljirra's application and keep his application current while higher-level officials consider whether Oljirra in particular and OLF members in general are eligible for relief. Oljirra has been fingerprinted regularly (most recently in June 2012) to ensure that his case will be ready for prompt adjudication once the other issues surrounding his application are resolved. Ex. ¶ 9. Similarly, Oljirra's preliminary security checks and FBI name checks have been completed. Ex. ¶¶ 10-11. For all of these reasons, the first *TRAC* factor weighs heavily in favor of the government.

The second *TRAC* factor asks whether there is any Congressionally indicated timetable for decision. Some courts have noted that, in 8 U.S.C. § 1571(b), Congress expressed its "sense . . . that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." As this Court noted in *Al Sawad*, however, the decision whether to grant discretionary relief under § 1182(d)(3)(B) is a special circumstance that takes a case well outside of § 1571(b). *See Al Sawad*, 2012 WL 3238258, at *4 (citing *Ayyoubi v. Holder*, No. 4:10-CV-1881 SNLJ, 2011 WL 2983462, at *8 (E.D. Mo. July 22, 2011)). The exercise of purely discretionary relief by Cabinet-level officials under

§ 1182(d)(3)(B) cannot be compared to garden-variety individual determinations of eligibility for immigration benefits. The Court therefore does not give § 1571(b) much weight in determining the reasonableness of the delay.

The fourth *TRAC* factor focuses on the effect that ordering defendants to adjudicate Oljirra's application will have on higher and competing priorities. As explained above, Oljirra's application requires defendants to make decisions not only about him as an individual, but about the OLF as an organization. The premature adjudication of Oljirra's application could affect the adjudication of applications of other OLF members who seek legal permanent residency, forcing USCIS either to rush its decisions as to all OLF applicants or to risk making inconsistent judgments as to similarly situated applicants. This factor weighs in favor of the government.

The fifth *TRAC* factor concerns the prejudice caused by the delay. Oljirra claims to be suffering considerable prejudice, but most of the prejudice that he cites stems from the failure to *grant* his application, not from the delay in *adjudicating* his application. For example, Oljirra complains that he faces limitations on his ability to travel and work. Oljirra also complains that defendants' failure to adjudicate his application is delaying the date on which he can apply for citizenship. But if Oljirra's application is denied, he will continue to suffer these same hardships. As Oljirra concedes, the Court does not have authority to compel defendants to grant his application, but only authority to compel defendants to make a decision — one way or another. (And defendants credibly aver that if they are compelled to make a decision now, they will simply deny Oljirra's application. Ex. ¶ 31.) Thus, the only prejudice that is relevant is the prejudice that the *delay* has caused, not the prejudice that the failure to grant the application has caused.

There is no doubt that living in legal limbo for many years can have a substantial impact on an applicant's life. Nevertheless, unlike the other forms of prejudice on which Oljirra would like to rely, the anxiety caused by the delay is not a particularly concrete form of prejudice. And apart from the stress of not knowing whether his application will be granted, Oljirra cannot point to any other source of prejudice stemming from defendants' failure to adjudicate his application.

The sixth *TRAC* factor, which states that delay may be unreasonable even if there is no government impropriety behind it, does not add anything to the analysis in this case. There is no suggestion that the government has refused to adjudicate Oljirra's application for an improper reason.

Having considered each of the *TRAC* factors, the Court concludes that defendants' delay in adjudicating Oljirra's application is not unreasonable as a matter of law.[2] The decision that Oljirra wants this Court to order defendants to make requires a great deal of interagency consultation and a significant investment of resources on the part of high-level government officials. It also requires the careful weighing of sensitive national-security, foreign-policy, and humanitarian concerns. The officials vested with the authority to weigh these concerns have not been idle; they have been examining the many and varied groups around the world that may be

---

[2]Oljirra compares this case to *Al-Rifahe*, in which the court denied the government's motion for summary judgment regarding the reasonableness of the delay. *Al-Rifahe*, 776 F. Supp. 2d at 938. In *Al-Rifahe*, however, the government had already issued a policy memorandum stating that members of the organization to which the plaintiff had belonged could be considered for a discretionary exemption from inadmissibility. *Id*. at 930. All that remained was an evaluation of the plaintiff's individual circumstances, making it harder to justify the delay. Here, by contrast, the government has not yet decided whether members of the OLF should be considered for discretionary relief. This case is more similar to *Debba*, in which the Eighth Circuit found a ten-year delay to be not unreasonable. *Debba*, 366 Fed. App'x at 698-99. And, as previously noted, defendants have had only eight months to determine whether the LGE applies to the OLF and Oljirra.

eligible for relief. Although Oljirra is certainly suffering some prejudice from the uncertainty created by the delay in adjudicating his I-485 application, that prejudice is relatively minor, and it does not come close to outweighing the factors demonstrating the reasonableness of the delay. Defendants' motion for summary judgment is therefore granted.

ORDER

Based on the foregoing, and on the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss or, in the alternative, for summary judgment [ECF No. 14] is GRANTED IN PART and DENIED IN PART:

    a. The motion is DENIED insofar as it seeks dismissal for lack of jurisdiction or for failure to state a claim.

    b. The motion is GRANTED insofar as it seeks summary judgment on the merits of plaintiff's claims.

2. Plaintiff Regassa Oljirra's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 11, 2013         s/Patrick J. Schiltz
                              Patrick J. Schiltz
                              United States District Judge